IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MELINDA J. CARR and ALISTAIR P. CARR,

                Plaintiffs,

v.                                             ORDER

DEPARTMENT OF PUBLIC INSTRUCTION        17-cv-413-wmc
and NEW GLARUS SCHOOL DISTRICT,

                Defendants.

---

Plaintiffs Melinda J. Carr and Alistair P. Carr are proceeding in this lawsuit under 20 U.S.C. § 1415(i)(2), which permits a party to appeal in federal court a decision issued as part of an Individual with Disabilities Education Act ("IDEA") due process hearing. Here, plaintiffs are challenging on behalf of their son, "S.C.," a April 12, 2017, decision by Administrative Law Judge Sally Pederson that denied their request for a due process hearing against the New Glarus School District. (*See* Third Am. Compl. (dkt. #22) at 1-2.) Specifically, plaintiffs challenge the ALJ's conclusions that: (1) from January to May 2016, the District provided S.C. with a free, appropriate public education ("FAPE"), as guaranteed by the IDEA, despite failing to offer a math class appropriate to meet S.C.'s needs or paying the cost of a needs-appropriate math class at the University of Wisconsin-Madison; and (2) during the 2015-2016 school year, the District provided S.C. with a FAPE despite failing to implement various provisions of his individualized education program ("IEP"). (ALJ. Dec. (dkt. #22-1) at 2, 13-14, 16-17.) Currently pending before the court are three motions, which this opinion resolves as follows:

- plaintiffs' motion to supplement the administrative record (dkt. #43) will be granted in part and denied in part;

- plaintiffs' motion to strike defendant's opposition to that motion supplement (dkt. #48) will be denied; and

- plaintiffs' motion to extend the February 16, 2017, expert disclosure deadline (dkt. #57) will be denied as moot.

## SUMMARY OF ALJ'S FINDINGS AND CONCLUSIONS

To provide adequate context for plaintiff's motion to supplement, the court briefly summarizes only the relevant portions of the ALJ's April 12, 2017, findings of fact and conclusions of law. (Dkt. #22.)

### I. Findings of Fact

In 2012, an IEP team identified S.C. as a child with a disability resulting from a traumatic brain injury ("TBI"), who was eligible to receive special education and related service. Before his December 2010 TBI, S.C. had been identified as a gifted and talented student.

S.C. began the 2015-2016 school year in the Oregon School District, and that district developed an IEP for him. After the first week of school, however, the Carrs requested that their son be transferred to the New Glarus School District ("District"). The District accepted S.C., and he began attending the New Glarus High School as a junior in September 2015. At that time, the District also accepted S.C.'s August 2015 IEP created by the Oregon School District.

The August 2015 IEP provided that S.C. would participate full-time with non-disabled peers in regular education classes, and he would receive special education services for 15 minutes once a week from special education staff. The special education services were described as "academic self-management" and focused on teaching S.C. "study skills and following up with organization and prioritization."

That same school year, the District joined many other school districts in the area in adopting a new math curriculum called College Preparatory Math ("CPM"), an approach that diverges from the tradition method focused on direct teacher instruction. Instead, CPM requires students to use deductive and inductive reasoning to work on math problems with their peers, and then receive feedback, assistance or redirection from the math teacher and their peers.

In the first trimester of the 2015-2016 school year, S.C. was enrolled in a pre-calculus math class that used this CPM methodology. On September 23, 2015, plaintiff Melinda Carr emailed S.C.'s math teacher about CPM, specifically expressing concern that due to S.C.'s TBI, he has problems with organization and deductive reasoning, but responds well to information told directly to him. During an October 2015 parent-teacher conference, the Carrs learned that S.C.'s pre-calculus grade at that point was a "D." After that conference, S.C.'s math teacher began meeting with S.C. directly to assist him with homework and provide instruction as needed. That teacher also began serving as S.C.'s coach for a free, on-line program that provides direct math instruction. S.C. ended the first trimester with a C+ grade.

Due to the Carrs' concern that S.C. might not be eligible for calculus for his senior year, the District convened an IEP team meeting on December 2, 2015, to discuss S.C.'s math instruction. At that meeting, the team discussed changes to the IEP goals to provide S.C. more services for study skills and organization, as well as including math instruction services. However, Melinda Carr did not agree to any of the proposed changes, and afterward, she requested another IEP team meeting, which was scheduled for January.

3

Beforehand, on December 18, 2015, Melinda met with the New Glarus High School principal and its special education director to discuss a distance-learning math class. Although not a formal IEP team meeting, the principal and special education director told Melinda that because the high school had a pre-calculus teacher who could meet S.C.'s math needs, there was no need to set up a distance-learning math program. From then until January 2016, the math teacher continued to provide S.C. additional support services and accommodations.

On January 7, 2016, the rescheduled IEP team meeting was held. In attendance was Melinda, S.C.'s parent advocate, the high school principal, the special education director, the special education teacher/case manager, the math teacher, school psychologist (Jane O'Brien) and the special education director from the Belleville School District (where S.C. had previously gone to school). The focus of the meeting was S.C.'s math instruction, and Melinda requested a new math goal be added to the IEP. Melinda also requested that the IEP be changed to a "consultation," so that the only special education services would be a meeting with a special education teacher once per trimester. The team also discussed S.C.'s goals related to study skills, executive functioning and scores on his special education evaluation. Unlike plaintiffs, the District proposed increasing S.C.'s special education services to 60 minutes per week.

The IEP team again failed TO reach a consensus. While Melinda stated that she wanted to end the meeting and requested a facilitated meeting, the special education director informed plaintiffs that in 15 days the District would be implementing a revised IEP that increased S.C.'s special education services.

Six days later, on January 13, Melinda met with the New Glarus high school principal and told him that plaintiffs wanted to enroll S.C. in a UW-Madison math class for the spring semester 2016 instead of sending him to pre-calculus in the District. Although the principal did not believe that S.C. had exhausted all available high school courses in the subject area first, he signed the form to permit S.C. to enroll. Melinda did not ask that the District pay for the cost of that class, and indicated that plaintiffs would pay for it. The ALJ found that the Carrs did not provide *the District* with prior written notice that they were enrolling S.C. at UW-Madison.

On January 15, 2016, the special education director provided the Carrs with the revised IEP discussed at the January 7 IEP meeting. On January 22, the District's special education director learned that plaintiffs filed a request for a facilitated IEP with the Wisconsin Special Education Mediation System. As a result, the District agreed to a facilitated IEP and the special education director informed the Carrs that the District would wait to implement the revised IEP and continue implementing the September 2015 IEP.

Later, when the first facilitator withdrew, plaintiffs cancelled the rescheduled meeting altogether and requested a mediation instead. The District refused, and at some point in March 2016, it implemented the revised IEP for approximately one week. Once plaintiffs filed a request for a due process hearing and IDEA complaint with the Department of Public Instruction ("DPI"), however, the District stopped and reverted back to the September 2015 IEP. S.C. ultimately received a grade of B- in his traditionally-taught math class at UW-Madison.

By the time of the due process hearing, S.C. had gone back to the Belleville School District. As a result, the Carrs were seeking an order requiring the District to pay: (1) $5,537 to cover the cost of the UW-Madison math class; *and* (2) $20,250 to cover the cost of 14 months of executive functioning coaching for S.C. to compensate for the District's alleged failure to provide executive functioning coaching to S.C. during the 2015-2016 school year as called for in the September 2015 IEP.

II. Conclusions

    A. **Reimbursement for UW-Madison Math Course**

The ALJ determined that the District did not need to reimburse plaintiffs the cost of the UW-Madison math class on two grounds. *First*, the ALJ began with the threshold inquiry in a reimbursement dispute: whether the District offered S.C. a free, appropriate public education or FAPE that met his individual needs, as required by the IDEA. Plaintiffs argued that the District denied a FAPE to S.C. by refusing to revise his IEP in January 2016 to include a pre-calculus course taught using a traditional methodology through verbal presentation of the material. The ALJ rejected that argument, however, concluding that S.C. *was* offered FAPE because: (1) the only approved September IEP did not include math special education services; (2) his math teacher started working with him in October, and S.C. ended up with an improved grade by the end of the trimester; (3) S.C.'s parents refused to add a math goal during the January 2016 IEP meeting, instead preferring that S.C. be taught math using a traditional methodology; (4) the District had discretion to determine whether to use the CPM or traditional methodology to teaching math; and (5)

pre-calculus was challenging for S.C., just as it was for most regular education students in that advanced class.

With respect to the Carrs' January 2016 request, the ALJ found that: (1) the Carrs rejected the District's proposal to provide S.C. additional special education services; (2) the District had discretion to determine what instructional methodology it would use; and (3) the college preparatory math course or CPM was not inappropriate for S.C. In reaching this conclusion, the ALJ noted specifically that S.C.'s performance in math improved in October of 2015 when his math teacher started working with him more closely. The ALJ nevertheless acknowledged in a footnote that the Carrs' post-hearing briefing raised an argument that the District violated the IDEA by not including an individual on S.C.'s IEP team who could interpret the instructional implications of evaluation results. In the Carrs' view, the school psychologist, Jane O'Brien, was not qualified to do so. The ALJ was not persuaded by this argument. Regardless, the ALJ pointed out that the Carrs had not raised this issue in their due process hearing request as required by Wis. Stat. § 115.80(4), which provides that "the party requesting the hearing may not raise issues at the hearing that were not raised in the notice … unless the other party agrees."

*Second*, the ALJ pointed out that reimbursement may also be denied if the parents did not inform the IEP team that they were rejecting the school district's proposed placement and stated their intent to enroll their child in private school at the most recent IEP meeting before removal, or ten days before removal. The ALJ then concluded that the Carrs failed to inform the District that they were considering enrolling S.C. in UW-Madison, as required by Wis. Stat. § 115.791.

7

B.  **Implementation of IEP Provisions**

Next, the ALJ concluded, the Carrs failed to prove that the District had not implemented several provisions of the IEP. (Dkt. #22-1, at 14-17.)

OPINION

I.  **Motion to strike (dkt. #48)**

The court will deny plaintiffs' motion to strike defendant's opposition to their motion to supplement the record. The preliminary pretrial conference order set November 9, 2017, as the deadline for plaintiffs to file a motion to supplement, with any response due seven calendar days "after the request is filed and served." (Dkt. #42, at 3.) While plaintiffs filed their motion to supplement the record on November 9, 2017, it did not serve the motion on defendant New Glarus School District until November 13, 2017. As such, the District had seven days – until November 20, 2017 – to submit its opposition brief. Given that the District's response was filed on November 20, 2017, it will not be stricken as untimely.

II.  **Motion to supplement (dkt. #43) and to stay expert deadlines (dkt. #57)**

Plaintiffs seek to supplement the administrative record with the following three pieces of evidence:

(1) an expert report from a Speech and Language Therapist ("SLT"), who can explain the implications of the evaluations in S.C.'s report with respect to his ability to benefit from the CPM approach to teaching pre-calculus;

(2) an expert report from a current or former member of the UW-Madison math department, who can clarify how S.C. enrolled in a UW-Madison math course; and

(3) a complete copy of Exhibit 48 from the due process hearing.

Under 20 U.S.C. § 1415(i)(2), a party aggrieved by findings and a decision made pursuant to an IDEA due process hearing may file a federal action challenging the decision. In reviewing that decision, this court: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." § 1415(i)(2)(C). "Once the record is complete, the court is to base its decision on 'the preponderance of the evidence' and to grant 'such relief as [it] determines is appropriate.'" *Board of Educ. of Tp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 270 (7th Cir. 2007). This court's obligation is to "make an independent decision based on the preponderance of the evidence," while giving "due weight to the determinations made during the state administrative process." *Id.* (citing *Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)); *see also Patricia P. v. Board of Educ. of Oak Park*, 203 F.3d 462, 466 (7th Cir. 2000) ("courts do not have special expertise in the area of educational policy, they must give 'due weight' to the results of the administrative decisions").

As a function of this review, this court must consider the administrative record, and notwithstanding the apparent mandatory language in § 1415(i)(2)(C)(ii), the court has "discretion to admit additional evidence to supplement the record." *Ross*, 486 F.3d at 270. Even so, district courts have been cautioned against supplementing the administrative record absent a strong justification to avoid changing the district court's review "from one of review to a trial de novo." *Patricia P.*, 203 F.3d at 470. In *Town of Burlington v. Department of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984), the First Circuit interpreted

"additional evidence" to mean evidence that was not available at the time of the administrative hearing. *Id*. at 790. Specifically, the court stated that supplementation may be necessary to address:

> gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing. The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

*Id.* at 790-91. In *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 901 (7th Cir. 1996), the Seventh Circuit provided less explicit guidance for district courts to follow in evaluating requests to supplement the record, but its own cautionary language in *Ross* above and general approval of the approach described by the First Circuit in *Town of Burlington* suggests that this court should at least be wary of evidence that could and should have been put before the ALJ in the first instance. *Monticello,* 102 F.3d at 901. Applying this general approach, the court will deny plaintiffs' request as to the two expert reports, but will grant their request as to the exhibit.

### A. SLT Expert

In plaintiff's view, an expert in Speech and Language Therapy ("SLT") is necessary for this court to assess the appropriateness of the CPM methodology used in S.C.'s pre-calculus class. Specifically, plaintiffs claim that the January 2016 IEP team meeting required an SLT to interpret S.C.'s special needs evaluation and access S.C.'s mathematical instructional needs. The request to supplement the record with an expert report by a SLT will be denied for at least two reasons. *First*, plaintiffs neither propose a specific SLT expert, much less provide any explanation as to what special information or unique insight that

such an expert might provide. Altering the administrative record to permit plaintiffs to admit expert evidence they chose not retain in time for the hearing, much less to permit plaintiffs to only now *seek out and gather* evidence they do not currently have, does *not* fill in a gap in the administrative record. Indeed, the ALJ did not exclude *any* evidence that plaintiffs attempted to introduce that related to an SLT or the absence of an SLT at the IEP team meetings. Rather, plaintiffs are now attempting, in essence, to reboot their past presentation to challenge the ALJ's conclusion that the District was providing S.C. FAPE during the 2015-2016 school year. As a result, the absence of an SLT expert was far from an error, clerical or substantive, and opening the door now to the type of information that plaintiffs would like to introduce at this point would completely change the landscape of this court's review from a deferential evaluation of the ALJ's findings and conclusions to a de novo trial.

*Second*, plaintiffs fails to explain their own failure to challenge the absence of an SLT expert on his IEP team during the due process hearing request itself, as required by Wis. Stat. § 115.80(4). While plaintiffs claim the District "withheld" the fact that no one at the January IEP team meeting could interpret S.C.'s evaluation, it is undisputed that the school psychologist, Jane O'Brien, was present at the January 2016 IEP team meeting and provided an interpretation of S.C.'s evaluation. While O'Brien did not testify with respect to S.C.'s speech and language needs, because she is not an SLT, the ALJ's conclusions made it apparent that she relied on S.C.'s actual performance in his math classes to determine whether he was receiving FAPE during the relevant time period. As such, even assuming an SLT's testimony would have been helpful during the due process hearing, consideration of this issue (either by the ALJ or by this court) would appear to violate Wis. Stat.

11

§ 115.80(4). Accordingly, the court will not exercise its authority to supplement the record with an SLT expert report.

### B. UW-Madison Expert

For much the same reasons, the court will also reject plaintiff's request to supplement the record with an expert report from an unnamed member of UW-Madison's math department. Plaintiffs want to include such an expert to provide information about how S.C. was approved for enrollment in a math class despite not having completed prerequisite courses. Again, plaintiffs do not identify who this expert might be, and it appears that this individual would merely provide additional facts related to *how* S.C. was enrolled in a math class at UW-Madison. The fact that this evidence does not yet exist, and it is overly vague, are reason alone to deny this request.

Furthermore, plaintiffs have identified no gap that his information would fill. Still, plaintiffs' claim that information about UW-Madison's enrollment procedure is necessary because the ALJ allegedly discounted Melinda's testimony about their inability to comply with the ten-day notice requirement. However, this information does not fill a necessary gap because the relevant inquiry for purposes of evaluating the ALJ's decision about plaintiffs' compliance with the notice requirement is the steps plaintiffs took in *informing* the District of their plans, not the actual enrollment process at UW-Madison. As such, the court sees no gap in the administrative record that plaintiffs' proposed expert from UW-Madison would fill.

### C. Complete Copy of Exhibit 48 from Hearing

Finally, plaintiffs seek to add to the record a "complete" version of Exhibit 48, which

is an internet printout of the description of TOPS2, an evaluation that S.C. underwent. Plaintiffs explain that they meant to include the entirety of that printout, and indeed thought they had. Unlike the expert reports, this document appears to be the type of information appropriate for supplementation because it would fill in a gap created by a clerical error. As such, the court will grant plaintiffs' request to include this material in the record for purposes of evaluating the ALJ's decision.

### III. Motion to Extend Expert Deadlines (dkt. #57)

Finally, as the court has denied plaintiffs' request to supplement the record with multiple experts, there is no need to extend the expert disclosure deadline. Accordingly, that motion will be denied as moot.

ORDER

IT IS ORDERED that:

(1) Plaintiffs Melinda J. Carr and Alistair P. Carr's motion to supplement the administrative record (dkt. #43) is GRANTED in part and DENIED in part as set forth above.

(2) Plaintiffs' motion for extension of expert disclosure deadline (dkt. #57) and motion to strike (dkt. #48) are DENIED.

Entered this 9th day of February, 2018.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge