# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

---

MELINDA J. CARR and ALISTAIR P. CARR,

Plaintiffs,

v.

OPINION AND ORDER

DEPARTMENT OF PUBLIC INSTRUCTION
and NEW GLARUS SCHOOL DISTRICT,

17-cv-413-wmc

Defendants.

---

On behalf of their son, "S.C.," plaintiffs Melinda J. and Alistair P. Carr are appealing from the denial of their claims against the New Glarus School District under the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. More specifically, plaintiffs are appealing from Administrative Law Judge Sally Pederson's April 12, 2017, decision denying their son's claim to certain IDEA benefits following a three-day due process hearing. (*See* Third Am. Compl. (dkt. #22) at 1-2.) In response, the two defendants in this lawsuit, the New Glarus School District ("District") and the Department of Public Instruction ("DPI"), filed separate motions to dismiss to plaintiffs' third amended complaint. (Dkt. ##25, 27.) The District moves to dismiss under Federal Rule of Civil Procedure 12(b)(5), challenging plaintiffs' service of process (dkt. #27), while DPI moves to dismiss for failure to state a claim and on exhaustion grounds (dkt. #25). For the following reasons, the court will grant DPI's motion, but deny the District's motion pending plaintiffs' proper service of process on the District to avoid dismissal from this entire lawsuit.

## ALLEGATIONS OF RELEVANT FACTS[1]

For purposes of defendants' pending motions, the court need only recite the procedural aspects of the due process hearing request, the allegations of the Carrs specific to DPI's claimed involvement, and how the Carrs served the District with the summons and complaint.

### A. Due Process Hearing

On October 14, 2016, the Carrs submitted to DPI their request for a due process hearing against the District based on its alleged mishandling of S.C.'s educational needs during the 2015-2016 school year in violation of the IDEA. After receiving the request, DPI referred it to the State of Wisconsin Division of Hearings and Appeals ("DHA"). The DHA in turn assigned the matter to ALJ Pederson as Case No. DPI-16-0027.

ALJ Pederson conducted a due process hearing in the case on January 12, February 22 and February 23, 2017. The parties to the hearing were the Carrs and the District. (DPI was not a listed party.) On April 12, 2017, the ALJ issued a decision finding that: (1) from January to May 2016, the District provided S.C. with a free, appropriate public education ("FAPE") guaranteed by the IDEA, despite neither offering a math class appropriate to meet S.C.'s individual needs, nor paying the cost of S.C. taking a needs-appropriate math class at the University of Wisconsin-Madison; and (2) the District still provided FAPE during the 2015-2016 school year by not implementing various provisions

---

[1] Consistent with its obligations to *pro se* litigant's complaint, the court assumes the facts above based on a generous reading of the allegations in plaintiffs' third amended complaint (dkt. #22), the ALJ opinion plaintiffs attached to the third amended complaint (dkt. #22-1), and all reasonable inferences from those facts. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972).

of his individualized education program ("IEP"). (ALJ. Dec. (dkt. #22-1) at 2, 13-14, 16-17.)

B. DPI

The Carrs only allegations related to DPI are as follows:

> 8. The DPI is responsible for ensuring that school districts: comply with federal law, Individuals with Disabilities Education Act (IDEA); and provide disabled students with a free and appropriate public education (FAPE) as provided by 34 Code of Federal Regulations (CFR) § 300.17.
>
> 9. The DPI has not enforced IDEA and FAPE in this matter.

(3d Am. Comp. (dkt. #22) ¶¶ 8-9.) Other than those two paragraphs, the Carrs include no allegations related to the DPI.

C. Plaintiffs' service on the District

The Carrs filed their original complaint in this lawsuit on May 26, 2017, and on July 11, 2017, they filed the affidavit of their process server, Gregory Kowal. In his affidavit, Kowal avers that he received the complaint from Melinda Carr, directing that he serve "Attorney Lori Lubinsky, Axley Brynelson, LLP, 2 E. Mifflin St., #200, Madison, WI 53703." (Dkt. #5-1, at 2.) Kowal further avers that on July 7, 2017, the Summons and Complaint were served upon Kathy Richardson, a legal assistant and employee authorized to accept service on behalf of Lubinsky.

The Carrs amended their complaint multiple times after service, filing their First Amended Complaint on August 11 (dkt. #18), their Second Amended Complaint on August 15 (dkt. #19), and their Third Amended Complaint (the now operative complaint

in this lawsuit) on August 16, 2017 (dkt. #22). The certificates of service accompanying each amended complaint indicated that they, too, were served on Attorney Lubinsky, albeit by the United States Postal Service. (Dkt. ##18-1, 19-1, 22-2.) In response, the District has filed answers to the Complaint, Second Amended Complaint and Third Amended Complaint on July 28, August 15, and August 21, 2017, respectively. As its first affirmative defense in each answer, the District claimed that plaintiffs "failed to properly and timely serve this Defendant with the Summons and Complaint." (Dkt. ##9, 20, 23.) The District did not, however, file its motion to dismiss until August 31, 2017. (Dkt. #27.)

OPINION

As defendants' motions rely on separate standards for dismissal, the court will address them separately.

I. **The District's Motion to Dismiss**

The District has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5), which tests the sufficiency of service of process. (Dkt. #27.) In addition to opposing the motion on substantive grounds, plaintiffs raise two procedural objections. First, plaintiffs argue that the District waived this defense by failing to explicitly cite Rule 12(b)(5) in its answers. Plaintiffs fail to cite any authority for this odd objection. The District pleaded among its affirmative defenses that service was neither proper nor timely. This is enough notice pleading with or without reference to Rule 12(b)(5). Second, plaintiffs argue that the District failed to comply with Rule 12(b) by filing an answer before moving to dismiss. As plaintiffs point out, this objection finds some limited traction in

Rule 12(b), which states that "a motion asserting any of [the listed] defenses must be made before pleading if a responsive pleading is allowed." Rule 12(b) itself makes clear that a motion to dismiss is permissive, in that it may be brought, but failing to do so timely does not waive the defense. Indeed, Rule 12(b) goes on to state that a party is free to join any affirmative defense "in a responsive pleading or in a motion." Similarly, Rule 12(h)(1)(B) provides that a party waives the defenses listed in Rule 12(b)(2)-(5) if it fails to *either* "(i) make it in a motion" or "(ii) include it in a responsive pleading."

Of course, the absence of a *waiver* does not mean that the District is *entitled* to pursue its affirmative defense of a failure to serve by a Rule 12(b) motion but the court can see little purpose in deferring to rule on the merits of the defense itself, whether by exercising its authority under Rule 1 or by converting the District's motion into one for summary judgment under Rule 12(d).

Federal Rule of Civil Procedure 4(m) governs the time limit in which service must occur and the possible consequences of failing to do so. In pertinent part, it provides:

> If a defendant is not served within 90 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court *must* extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (emphasis added). In the absence of good cause, it is still within the court's discretion to extend the deadline. *See Henderson v. United States,* 517 U.S. 654, 662–63 n.10 (1996).

The District argues that dismissal is appropriate because: (1) plaintiffs have not

5

properly served the complaint; (2) plaintiffs' failure to serve is not supported by good cause; and (3) the court should not exercise its discretion to extend plaintiffs' service deadline. While the District's first two arguments have substantial merit, the court will exercise its discretion to extend the time for service to permit plaintiffs one last the opportunity to effect proper service.

*First*, Federal Rule of Civil Procedure 4(j) provides that service upon a state-created governmental organization (like the District) is accomplished by serving the summons and complaint upon the chief executive officer or by serving the summons and complaint in the manner prescribed by the law of the state for the particular governmental organization. Under Wis. Stat. § 801.11(4)(a)(6), a school district or school board can only be served by personal service on "the president or clerk thereof." Certainly, Attorney Lubinsky is not the District's chief executive officer, president or clerk. Additionally, the parties appear to agree that Lubinsky was not designated by the District to accept service on its behalf. *See Schultz v. Schultz*, 436 F.2d 635, 638 (7th Cir. 1971) (service on defendant's attorney insufficient because attorney was not "authorized by appointment to receive service of process in the instant case"). Nonetheless, plaintiffs argue that regardless of whether Lubinsky was the proper agent to receive service, they argue that service on her for purposes of this lawsuit was proper having been instructed to communicate only with her "in the matter of S.C." (Pl. Opp'n Br. (dkt. #34) 1.) Plaintiffs cite no authority for the proposition that the rules related to their past proceedings before the DHA permitted them to circumvent the Federal Rules of Civil Procedure governing this court. Instead, they cite a decision in which a district court found a factual dispute as to whether a defendant's

6

attorney was authorized to receive service of a client's complaint. *See Trotter v. Oppenheimer & Co., Inc.*, No. 96-c-1238, 1997 WL 102531, at *2 (N.D. Ill. Mar. 4, 1997). That decision is obviously not on point. Regardless, the court can find no basis to deem service on Lubinsky proper under Rule 4. Accordingly, plaintiffs' continued failure to properly serve the District since filing the complaint on May 26, 2017, subjects it to possible dismissal under Rule 4(m).

*Second*, plaintiffs have failed to provide good cause for their failure to serve properly. Even accepting that plaintiffs might have initially believed that serving Lubinsky was sufficient, they cannot explain their failure to correct this mistake once the District filed answers that repeatedly asserted plaintiffs failed to properly and timely serve the complaint. As noted, Rule 4(j) and Wis. Stat. § 801.11(4)(a) are quite clear about who plaintiffs should serve to effect service on the District. To the extent the rules themselves leave any doubt, the District's filings in this lawsuit to this point have laid out the specific path by which plaintiffs could have effected proper service. Plaintiffs' failure to even *attempt* to correct its mistake in light of the District's filings is puzzling, and certainly do not support a finding of good cause. As such, the court is not *required* to extend the time for service here. *See* Fed. R. Civ. P. 4(m); *Panaras v. Liquid Carbonic Indus. Corp.,* 94 F.3d 338, 340 (7th Cir.1996) ("[W]here good cause is shown, the court has no choice but to extend the time for service.").

Nevertheless, the court will give plaintiffs one more chance to properly serve the District. In determining whether to extend the deadline, the court is to consider:

> (1) whether the expiration of a statute of limitations during the pending action would prevent refiling, (2) whether the

> defendant evaded service, (3) whether the defendant's ability to defend would be prejudiced by an extension, (4) whether the defendant had actual notice of the lawsuit, and (5) whether the defendant was eventually served.

*Cardenas v. City of Chi.,* 646 F.3d 1001, 1006 (7th Cir.2011).

On balance, these factors support granting plaintiffs *one* extension of the time to serve the District properly. The first factor weighs in favor of an extension: plaintiffs aver that their claim would be dismissed on statute of limitations grounds because they only had until July 11, 2017, to commence an action in federal court. *See* 20 U.S.C. § 1415(i)(2). The second factor weighs against an extension because no facts suggest that the District attempted to evade service, other than by inexplicably waiting to reopen the issue of service by bringing a timely 12(b) motion to dismiss. The third and fourth factors both favor an extension. The District's *ability* to defend this lawsuit will not be prejudiced as a result of an extension. To the contrary, the District not only had actual notice of this lawsuit, counsel for the District has been actively involved in the defense of this lawsuit despite the lack of proper service. Accordingly, granting plaintiffs a short window of time to properly serve the District is appropriate.

**If plaintiffs wish to continue this lawsuit, they *must* serve the New Glarus School District with the complaint and summons in this lawsuit consistent with requirement of Federal Rule of Civil Procedure 4 on or before March 5, 2018. Once service is complete, plaintiffs shall file proof promptly with the court. Failure to do so timely will result in the dismissal of this lawsuit.**

## II. The DPI's Motion to Dismiss

DPI moves to dismiss plaintiffs' third amended complaint on two grounds: (1) plaintiffs fail to state a claim against DPI; and (2) plaintiffs failed to exhaust their administrative remedies. (Dkt. #25.)

### A. Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) is designed to test the complaint's legal sufficiency. Dismissal is only warranted if no recourse could be granted under any set of facts consistent with the allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). With respect to an ALJ's decision regarding a child's FAPE under IDEA, the school district is the proper defendant in this action. *Doe v. Eagle-Union Cmty. Sch. Corp.*, 101 F. Supp, 2d 707, 717 (S.D. Ind. 2000) (proper defendant for an IDEA claim is the local education agency, in that case, the high school), *vacated as moot*, 2 F. App'x 567 (7th Cir. 2001). In contrast, the state agencies involved in resolving the issue are not proper defendants, as suing a state agency responsible for "deciding a case incorrectly is no more appropriate than adding the trial judge as a party-defendant to an appeal of an adverse decision." *Weyrick v. New Albany-Floyed Cty. Consol. Sch. Corp.*, 2004 WL 3059793, at *22 (S.D. Ind. Dec. 23, 2004). Again, the "remedy for an erroneous decision is an IDEA action against the local school district." *Id.*

Here, not only was DPI uninvolved in S.C.'s educational services as pleaded, but DPI's handling of plaintiffs' request for a due process hearing was limited to providing a forum for which their claims could be heard by an Administrative Law Judge. As DPI now

9

reiterates, plaintiffs' third amended complaint still does not include *any* allegation that implicates its involvement beyond providing this forum. Instead, plaintiffs include one allegation outlining DPI's obligation to ensure that districts comply with federal law, and another conclusory allegation that DPI did not enforce FAPE and the IDEA. Neither of these allegations are sufficient to state a claim against DPI.

To be sure, a state educational agency such at the DPI *may* be a proper party to actions involving claims of "systematic violations of the IDEA," meaning that the action "implicat[es] the integrity of the IDEA's dispute resolution procedures themselves." *See M.O. ex rel. Ondrovic v. Ind. Dep't of Educ.*, No. 2:07-CV-175-TS, 2008 WL 4056562, at *8 (N.D. Ind. Aug. 29, 2008). However, plaintiffs' allegations against the DPI do not support such an inference here. To the contrary, the allegations support the inference that Wisconsin's IDEA dispute resolution process worked as it should, and plaintiffs are now complaining about the substance of the ALJ's resulting opinion.[2]

In fairness, plaintiffs' opposition brief does argue that DPI failed to provide an impartial due process hearing as required by 20 U.S.C. § 1415(f). While they repeatedly assert that ALJ Pederson was not impartial, however, the alleged facts do not support an inference that DPI was somehow at fault. For instance, it might have alleged that a DPI official knew or had reason to know that Pederson was biased against plaintiffs, but they

---

[2] Substantively, in this lawsuit, the Carrs allege that the ALJ favored the District's position, taking notes only during its presentation and testimony and essentially ignoring their own testimony. They also take issue with many of the ALJ's findings and ultimate conclusions, characterizing many as "glossing over," "misstating," or otherwise inaccurately reporting information from S.C.'s IEP as well as the events that gave rise to the hearing.

10

do not. Again, to the contrary, plaintiffs' complaint specifically alleges that DPI forwarded plaintiffs' due process hearing request to DHA, which then assigned the case to ALJ Pederson. As a result, plaintiffs' claims in this lawsuit stem *only* from the District's alleged actions, including the allegedly improper manner in which the ALJ conducted the hearing and made findings and conclusions. Since DPI has no identified involvement in any of the substantive actions giving rise to this lawsuit, the court will grant DPI's motion to dismiss.

B. **Exhaustion of Administrative Remedies**

Even if the court rejected DPI's failure to state a claim argument, the court would dismiss DPI, albeit without prejudice, due to plaintiffs' failure to exhaust their administrative remedies. In cases where a plaintiff alleges injuries that could be redressed by IDEA's administrative procedures and remedies, courts are encouraged to require exhaustion of administrative remedies. *See McCormick v. Waukegan Sch. Dist. No. 60,* 374 F.3d 564, 568 (7th Cir. 2004) (citing *Robb v. Bethel Sch. Dist.,* 308 F.3d 1047, 1054 (9th Cir.2002)); *see also,* 20 U.S.C. § 1415(l). Here, plaintiffs' allegations in their third amended complaint, along with the ALJ's decision, confirm that plaintiffs did not include DPI as a separate party to the due process proceeding, and thus did not exhaust their administrative remedies as to DPI. Indeed, plaintiffs admit as much while arguing that they did not need to exhaust.

While plaintiffs are correct that certain circumstances excuse the failure to exhaust, theirs is not one of them. Specifically, if the injuries cannot be redressed by the administrative process, then exhaustion would be futile or inadequate, and exhaustion is not required. *See Honig v. Doe,* 484 U.S. 305, 327 (1988); *see also McCormick,* 374 F.3d at

568. In *McCormick,* the student suffered from a rare form of muscular dystrophy. Even though the physical education teacher knew of the student's limitations, she made him perform strenuous physical exercises that had devastating impacts on his physical health. In that case, the court concluded that exhausting administrative remedies was futile, since IDEA did not provide a remedy for the injuries at issue, which were non-educational in nature. *Id.*; *see also Padilla v. Sch. Dist. No. 1,* 233 F.3d 1268, 1274-75 (10th Cir. 2000) (disabled student who suffered a fractured skull and exacerbation of a seizure disorder when placed in an unsupervised windowless closet did not need to exhaust because the claim was brought "solely to redress" the physical injuries and was outside of the scope of IDEA); *Witte v. Clark County Sch. Dist. .,* 197 F.3d 1271, 1275-76 (9th Cir.1999) (exhaustion unnecessary due to physical abuse, injuries and the lack of possible remedies under IDEA's administrative processes that could address plaintiff's damages).

The facts of this case are clearly distinguishable from the one cited above. Plaintiffs do not dispute that the administrative processes and remedies were (and are) available to them, nor is there any indication that they would have been unable to pursue a claim against the DPI, either along with their claim against the District or subsequent to that proceeding. Instead, plaintiffs argue that they did not need to exhaust as to DPI because the DPI was not involved in implementing S.C.'s IEP at the District. Ignoring the obvious fact that this assertion belies plaintiffs' claim that DPI violated IDEA, the exhaustion requirement applies to any parent or school district to bring an *IDEA claim*. As noted above, if plaintiff did, in fact, have a factual basis upon which to assert a claim of a systematic deficiency, then the DPI *could* be a proper party to such a proceeding.

Accordingly, even if plaintiffs' third amended complaint sufficiently stated a claim against DPI, which it does not, the court would still have to dismiss it for failure to exhaust, albeit without prejudice.

ORDER

IT IS ORDERED that:

1) Defendant New Glarus School District's motion to dismiss (dkt. #27) is DENIED.

2) Defendant Department of Public Instruction's motion to dismiss (dkt. #25) is GRANTED, and the Department of Public Instruction is DISMISSED from this lawsuit.

3) **Plaintiffs have until March 5, 2018, to serve the New Glarus School District with the complaint and summons in this lawsuit consistent with requirement of Federal Rule of Civil Procedure 4.**

4) **Once service is complete, plaintiffs shall file proof promptly with the court. Failure to do so timely will result in the dismissal of this lawsuit.**

Entered this 22nd day of February, 2018.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge